**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

CYNTHIA J. SELTON; and
MICHAEL J. PAULUCCI,

        Plaintiffs,

v.                                    Case No. 6:14-cv-1278-Orl-37KRS

U.S. BANK TRUST NATIONAL
ASSOCIATION, S.D.; HOWARD J.
RUBIN; RICHARD IHRIG; LINDQUIST
& VENNUM PLLP; and GINA J.
PAULUCCI,

        Defendants.

## ORDER

This cause is before the Court on the following:

1. Defendants' Consolidated Motion to Dismiss the Complaint (Doc. 59), filed March 27, 2015; and

2. Plaintiffs' Response to Consolidated Motion to Dismiss (Doc. 60), filed April 13, 2015.

This action is part of a multi-court dispute over the administration of the Gina J. Paulucci Trust ("Trust"). (*See* Doc. 2, ¶ 1.) Plaintiffs are Cynthia Selton and Michael Paulucci, who are siblings of Gina Paulucci and contingent remainder beneficiaries of the Trust. (*See id.* ¶¶ 8–9.) Defendants are: (1) Gina Paulucci, the current beneficiary of the Trust; (2) Howard J. Rubin, Richard Ihrig, and U.S. Bank Trust National Association, S.D. ("U.S. Bank"), the current trustees of the Trust (*see id.* ¶¶ 2–6); and (3) Lindquist & Vennum, PLLP, a law firm at which trustee Ihrig is a partner and which allegedly accepted payment from the Trust for services rendered to Gina Paulucci (*see id.* ¶¶ 10, 22).

To summarize the Complaint, Plaintiffs claim that Defendants surreptitiously changed the Trust's situs designation from Florida to South Dakota so that the trustees could make distributions and payments that Florida law prohibits but South Dakota law permits. (*See id.* ¶¶ 18–22, 26–28.) Further, Plaintiffs claim that Defendants took advantage of South Dakota's trust-supervision statutes to obtain an uncontested, allegedly erroneous order from a South Dakota state court that approved of their conduct and confirmed the situs change. (*See id.* ¶¶ 23–25.) Maintaining that Defendants' actions violated Florida's trust-administration laws, Plaintiffs seek a declaration that the South Dakota state-court order is "void," as well as other related relief. (*See id.* ¶¶ 29–57.)

Defendants move to dismiss this action under the *Princess Lida* doctrine, arguing that the South Dakota court maintains continuing and exclusive jurisdiction over *quasi in rem* actions involving the Trust.[1] (Doc. 59, p. 7 (citing *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 465–67 (1939)).) Plaintiffs oppose. (Doc. 60.) The matter is ripe for adjudication. Upon consideration, the Court finds that the motion is due to be granted in part and denied in part.

**BACKGROUND**

In 1996, frozen-food magnate Jeno F. Paulucci executed an irrevocable agreement ("Agreement") which created separate trusts for each of his children. (*See* Doc. 2-2, pp. 2, 7–8, 22.) Under the terms of the Agreement, all of the children are contingent remainder beneficiaries of each other's trusts, taking per stirpes if the primary beneficiary dies without "issue." (*Id.* at 8.) Defendant Gina Paulucci's Trust is a product

---

[1] Defendants raised several other grounds for dismissal. (*See* Doc. 59, pp. 16–35.) However, as *Princess Lida* is dispositive, the Court declines to address Defendants' remaining arguments.

2

of the Agreement, so Plaintiffs—her siblings—are contingent remainder beneficiaries. (Doc. 2, ¶¶ 1, 7–9.)

Pursuant to the Agreement's floating choice-of-law provision, the Trust is governed "under the laws of the state that is then the trust situs." (*See* Doc. 2-2, p. 19.) The provision further states:

> If there is a change in trust situs, the laws of the state of any new trust situs shall apply as of the date of the change of situs, and all constructions, interpretations, limitations and restrictions imposed by the laws of any previous situs shall be of no further effect.

(*Id.*) The Agreement grants trustees the discretionary authority to change the situs of the Trust to any jurisdiction that they deem "advisable." (*Id.* at 17.) According to Plaintiffs, Florida was the Trust's original situs, and thus Florida law originally governed. (*See* Doc. 2, ¶¶ 11–13, 20, 29, 31.)

The impetus for this action began in 2010, when trustee Defendants Ihrig and Rubin took three important actions: (1) they appointed Defendant U.S. Bank as a third co-trustee; (2) they transferred the assets of the Trust to U.S. Bank in South Dakota; and (3) they designated South Dakota as the Trust's situs. (*See id.* ¶¶ 3, 20; Docs. 2-3, 59-1.) The trustee Defendants, including U.S. Bank, memorialized the actions in a document entitled "Appointment and Acceptance of Co-Trustee" (Docs. 2-3, 59-1), but they apparently did not provide a copy to Plaintiffs or otherwise notify them (Doc. 2, ¶ 20).

Three years passed without Plaintiffs noticing the changes. (*See id.* ¶¶ 21–22.) Then, for reasons unclear, Plaintiffs requested an accounting of the Trust in October 2013. (*Id.* ¶ 21.)

On January 2, 2014, the trustee Defendants provided the accounting, which revealed for the first time that they "had distributed hundreds of thousands of dollars to

3

Gina" and had made "hundreds of thousands of dollars in payments to attorneys for Gina, including payments to the firm of Lindquist & Vennum, where the co-trustee Ihrig is a partner." (*See id.* ¶ 22.) Plaintiffs contend that the distributions and payments would not have been permitted under Florida law, as the distributions were improvident and the payments were "conflict transactions." (*See id.* ¶¶ 26–28.)

Also on January 2, 2014—the same day that they provided the Trust accounting—the trustee Defendants filed a "Petition for Court Supervision, Privacy of Court File, and Confirmation of Situs and Law of Administration" ("Petition") in a South Dakota state court. (*See id.* ¶ 23; Doc. 59-1.) The trustee Defendants filed the Petition pursuant to S.D. Codified Laws § 21-22-9, which permits any fiduciary or beneficiary of a trust with a South Dakota trustee or with assets in South Dakota to request court supervision of the trust. Additionally, if a § 21-22-9 petition includes a trust accounting, the petitioner can "request court action as to *any matter* relevant to the administration of the trust." *See id.* (emphasis added). The trustee Defendants included an accounting in their Petition, and they requested that the South Dakota court "confirm that the situs of the Trust is in Minnehaha County, South Dakota, and that the laws of the State of South Dakota govern the administration of the Trust." (Doc. 59-1, p. 1.)

The South Dakota court set a January 27, 2014 hearing on the Petition. (*See* Doc. 2, ¶ 23.) Plaintiffs received actual notice of the hearing but, after the trustee Defendants refused to agree to a hearing extension, Plaintiffs refused to appear because they felt that they had been given inadequate time to prepare. (*See id.* ¶¶ 23–24.)

On February 4, 2014, following an uncontested hearing, the South Dakota court entered an order in which it expressly assumed jurisdiction over the Trust and confirmed

4

the Trust's South Dakota situs and governing law.[2] (Doc. 59-2, p. 6.)

In response, Plaintiffs filed this action in Florida state court, claiming that Defendants violated the notification, distribution, and payment provisions of Florida's trust-administration laws. (*See* Doc. 2.) As relief, Plaintiffs seek: (1) a declaration that the South Dakota state-court order is "void," the situs change was ineffective, and Florida law governs the Trust; (2) removal of the trustees; (3) voidance of all payments to Lindquist & Vennum; and (4) surcharges against the trustee Defendants for damages related to their "malfeasance." (*See id.* at 10, 14–15 (wherefore clauses).)

Defendants removed (Doc. 1) and now move to dismiss (Doc. 59).

## DISCUSSION[3]

Defendants move to dismiss this action under the *Princess Lida* doctrine (*id.* at 6–16), which holds that when two *in rem* or *quasi in rem* actions involve the same property, "the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other," 305 U.S. at 466. According to Defendants, *Princess Lida* is a subject matter jurisdiction doctrine that requires dismissal here because both this action and the South Dakota action are proceeding *quasi in rem*, both involve the Trust, and the South Dakota court assumed jurisdiction first. (Doc. 59, pp. 6–16.)

Plaintiffs disagree. According to Plaintiffs, *Princess Lida* reflects principles of abstention—not subject-matter jurisdiction—that have been subsumed within the broader *Colorado River* doctrine, which presumes that courts should retain jurisdiction. (Doc. 60,

---

[2] Later, on December 19, 2014, the South Dakota court issued another order in which it approved of all distributions and administrative acts taken by the trustees between July 26, 2007, and June 30, 2014, and absolved the trustees of "any and all liability" arising out of those matters. (Doc. 59-3).

[3] See below, note six, for a discussion of the applicable standard of review.

pp. 2–4.) Alternatively, Plaintiffs maintain that, regardless of whether it concerns jurisdiction or abstention, *Princess Lida* does not require dismissal here because this action proceeds *in personam*, not *quasi in rem*. (*Id.* at 4–7.)

For context, in *Princess Lida*, the U.S. Supreme Court granted certiorari to disentangle parallel state and federal actions involving administration of the same trust. *See* 305 U.S. at 461. Each lower court had concluded that it had exclusive jurisdiction over matters affecting the trust res, and each had enjoined its litigants from proceeding in the other forum. *See id.* at 458–61. On review, the U.S. Supreme Court affirmed the state court's injunction prohibiting litigation in the federal court, as both actions were *quasi in rem* and the state court had assumed jurisdiction over the trust first. *Id.* at 463–68.

Ambiguity in the *Princess Lida* opinion's language has caused a federal circuit split on whether the doctrine expressed therein pertains to subject matter-jurisdiction or abstention.[4] Several circuits treat it as a doctrine of subject-matter jurisdiction. *See Cartwright v. Garner*, 751 F.3d 752, 759–63 (6th Cir. 2014); *Cassity v. Pitts*, 995 F.2d 1009, 1012 (10th Cir. 1993); *Dailey v. Nat'l Hockey League*, 987 F.2d 172, 176 (3d Cir. 1993); *cf. State Eng'r v. S. Fork Band of Te-Moak Tribe of W. Shoshone Indians*, 339 F.3d 804, 810 (9th Cir. 2003) (holding that the "doctrine of prior exclusive jurisdiction" implicates subject-matter jurisdiction). Others treat it as a *mandatory* abstention doctrine.

---

[4] Driving the split, the *Princess Lida* opinion uses language that evokes subject-matter jurisdiction but a rationale that evokes abstention. For example, the Court arguably frames the question presented in terms of subject-matter jurisdiction, asking "whether the exercise of jurisdiction by a state court over the administration of a trust deprives a federal court of jurisdiction of a later suit *involving the same subject matter*." *Princess Lida*, 305 U.S. at 457 (emphasis added). Later though, the Court answers the question based on comity considerations, concluding that yielding jurisdiction to the first-acting state court "is necessary to the harmonious cooperation of federal and state tribunals." *Id.* at 466.

*See Carvel v. Thomas & Agnes Carvel Found.*, 188 F.3d 83, 86 (2d Cir. 1999); *Crawford v. Courtney*, 451 F.2d 489, 492 (4th Cir. 1971). Only the U.S. Court of Appeals for the First Circuit treats *Princess Lida* as a factor in the *Colorado River* permissive abstention analysis. *United States v. Fairway Capital Corp.*, 483 F.3d 34, 40 n.2 (1st Cir. 2007). The Eleventh Circuit has not expressly weighed in, nor has its predecessor, the former Fifth Circuit.[5]

After a thorough review, the Court concludes that *Princess Lida* is an abstention doctrine.[6] As the Second Circuit noted in *Carvel*, the Supreme Court in *Princess Lida* was "exploring the difference between in personam and in rem proceedings. Moreover, by invoking the importance of 'harmonious cooperation' between the federal and state courts, the Court indicated that the doctrine it was expounding was a rule of comity or abstention, rather than one of subject matter jurisdiction." 188 F.3d at 86.

However, contrary to Plaintiffs' characterization, *Princess Lida* is mandatory and has not been subsumed within the *Colorado River* doctrine. *See id.* (emphasizing that, while the *Princess Lida* rule is not a subject-matter-jurisdiction doctrine, but rather "a

---

[5] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all opinions handed down by the Fifth Circuit prior to October 1, 1981. 661 F.2d 1206, 1207 (11th Cir. 1981).

[6] As a procedural matter, neither party squarely addresses the appropriate Federal Rule to employ in deciding an abstention-based motion to dismiss. (*See* Doc. 59 (citing, without explanation, both Rule 12(b)(1) and Rule 12(b)(6)); Doc. 60 (citing generally to Rule 12(b)).) Their avoidance is understandable, as the Eleventh Circuit does not appear to have addressed the issue, and its sister circuits have intentionally evaded it. *See, e.g.*, *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 (9th Cir. 2014) (declining to "decide which Rule, if either, provides the correct vehicle for a motion to abstain"). The Court likewise declines to address the appropriate standard, as this Order relies only on the Complaint, its attachments, and judicially noticeable filings from the South Dakota action, all of which are reviewable under the stricter Rule 12(b)(6) standard. *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010).

principle of comity, in the nature of an abstention doctrine, the *Princess Lida* rule is no less binding on federal courts"). Unlike the *Colorado River* doctrine, which *permits* (but counsels against)[7] abstention based on principles of "wise judicial administration" and "conservation of judicial resources," 424 U.S. at 817 (citation and omitted), the *Princess Lida* doctrine *requires* abstention based on principles of comity and *in rem* jurisdiction. *See, e.g.*, *Citibank, NA v. Data Lease Fin. Corp.*, 645 F.2d 333, 338 (5th Cir. 1981) (characterizing the doctrine as a mandatory "matter of comity"); *Key v. Wise*, 629 F.2d 1049, 1059 (5th Cir. 1980) (observing that the *Princess Lida* doctrine has "especial importance in its application to Federal and state courts" and "establishes a bar to any other action in rem or quasi in rem respecting the same property until the first court's jurisdiction is properly terminated" (citation omitted)); *PPG Indus., Inc. v. Cont'l Oil Co.*, 478 F.2d 674, 677 (5th Cir. 1973) (noting that *Princess Lida* sets out a "virtually mechanical in rem rule").[8]

Having concluded that the *Princess Lida* doctrine requires mandatory abstention where applicable, the Court turns to whether it applies here. The *Princess Lida* doctrine applies where two actions involving the same property are proceeding *in rem* or *quasi in rem*. *See Princess Lida*, 305 U.S. at 466. Here, the parties tacitly agree that both actions involve the same property and that the South Dakota action proceeds *quasi in rem*; however, they dispute whether this action proceeds *quasi in rem* as well.[9]

---

[7] *Colorado River* abstention "is the exception, not the rule," 424 U.S. at 813, which is why Plaintiffs push for its application here (*see* Doc. 60, pp. 3–4).

[8] The former Fifth Circuit's consistent characterization of the *Princess Lida* doctrine as mandatory, albeit in dicta, suggests that the Eleventh Circuit would follow suit.

[9] Defendants contend that both this action and the South Dakota action proceed *quasi in rem*. (Doc. 59, p. 16.) In their response, Plaintiffs only address this action. (Doc. 60, pp. 5–6.) Accordingly, the Court presumes that Plaintiffs agree with Defendants'

Under *Princess Lida*, courts look to the plaintiffs' requested relief to determine whether an action proceeds *quasi in rem*; if the presiding court must have a substantial measure of "control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought," then the action is *quasi in rem*. *Id.* Actions requiring "a substantial measure of control" include not only "cases where property has been actually seized under judicial process," but also cases "brought to marshal assets, administer trusts . . . liquidate estates, and . . . suits of a similar nature." *Id.* at 466–67. Courts also consider how state law characterizes a particular cause of action, *see, e.g.*, *Cassity*, 995 F.2d at 1012 (considering Oklahoma law), although state-law labels and characterizations are not controlling, *see Dailey*, 987 F.2d at 177 (emphasizing that the term *quasi in rem* has a specialized meaning in the *Princess Lida* context).

In all four of their claims in this action, Plaintiffs request relief that would affect the administration of the Trust and the restoration of its corpus: Count I seeks a declaration that, *inter alia*, the Trust "continues to be governed by and *administered in accordance with* the State of Florida," Count II seeks removal of the trustees, and Counts III and IV seek recovery of allegedly improper Trust distributions and payments. (Doc. 2, pp. 10, 14–15 (wherefore clauses) (emphasis added)). Based on those requests, this is a paradigmatic *quasi in rem* proceeding under *Princess Lida*.[10] *See* 305 U.S. at 467

---

position on the South Dakota action. *See* Local Rule 3.01(b) (requiring opposition to be addressed and supported in the response memorandum). Regardless, the South Dakota action—noticed by publication and brought to supervise administration of the Trust—plainly falls within *Princess Lida's* definition of an *in rem* or *quasi in rem* action. *See* 305 U.S. at 456.

[10] Indeed, the federal claims and requests for relief at issue here are strikingly similar to those found to be *quasi in rem* in *Princess Lida* itself. *See* 305 U.S. at 459 (considering federal claims brought by beneficiaries "against . . . two trustees and the administrators of [a] deceased trustee, alleging mismanagement of the trust funds and

(holding that actions pertaining "solely . . . to administration and restoration of [a trust's] corpus" are *quasi in rem*). In the Court's research, every federal circuit presented with a similar fact pattern has reached the same conclusion. *See, e.g., Cartwright*, 751 F.3d at 762 ("In suits involving trust administration, the court must control the property in order to give effect to the resolution of the case, and are quasi in rem."); *Cassity*, 995 F.2d at 1012 ("[A] suit that concerns or determines the ownership, control and administration of a trust and the powers, duties and liabilities of the trustees is either *in rem* or *quasi in rem*."); *Dailey*, 987 F.2d at 177 ("The primary relief sought in both actions is the restoration of trust funds which were allegedly misappropriated. This is precisely the situation which was at issue in *Princess Lida* and which the court stated was encompassed within the term *quasi in rem*."); *Beach v. Rome Trust Co.*, 269 F.2d 367, 371 (2d Cir. 1959) ("[P]laintiff's demands for accounting of the estate and trust and removal of the trustee fall within the rule that a previously attached quasi in rem jurisdiction of property in a state court requires a federal court to dismiss any claim with regard to the property where the adjudication would interfere with the proceedings in the state court. This principle is so firmly rooted in our law as to have required and not merely permitted [the district judge] to dismiss the plaintiff's claims insofar as they sought an accounting of the estate and trust." (citations omitted)). Moreover, Plaintiffs' claims fall squarely within Florida's historical *quasi in rem* definition. *See State ex rel. S. Brevard Drainage Dist. v. Smith*, 170 So. 440, 441 (Fla. 1936) ("A proceeding quasi in rem is applied to any action between parties where the direct object is to reach and dispose of,

---

praying that the trustees be removed and all the defendants be made to account and repay the losses of the estate").

or to adjudicate the title or status of, property owned by the parties, or of some interest claimed by them, and duly put in issue by the allegations of the pleadings therein."). Accordingly, this action is *quasi in rem* under both state and federal law.

Briefly, Plaintiffs raise two counterarguments that warrant discussion. First, relying on *Marshall v. Lauriault*, 372 F.3d 175, 181 (3d Cir. 2004), Plaintiffs claim that this is an *in personam* action dealing "primarily with a determination of rights in [the] Trust," not with the Trust's administration, and thus *Princess Lida* does not apply.[11] (Doc. 60, pp. 5–6.) The Court disagrees. Tellingly, Plaintiffs' counterargument ignores their Complaint's affirmative allegation that the "administration of [the] Trust is dependent, in part, upon the facts or the law applicable to the facts" at issue here. (Doc. 2, ¶ 37.) More pertinently, *Marshall* is inapposite. *Marshall* involved a dispute over whether and to what extent adult adoptees qualified as beneficiaries under the terms of a trust. *See* 372 F.3d at 177–79. Here, as addressed above, Plaintiffs know precisely who the Trust beneficiaries are and how they will take: Defendant Gina Paulucci is the primary beneficiary, and Plaintiffs are the contingent remainder beneficiaries who will take per stirpes if Gina dies without surviving issue. (Doc. 2, ¶¶ 1, 7–9; Doc. 2-2, pp. 7–8.) In other words, Plaintiffs are not simply seeking an adjudication of their rights in the Trust; rather, they are contesting the

---

[11] This *in personam* argument—versions of which, as discussed below, are frequently raised and frequently rejected—stems from the following dicta in *Princess Lida*: "[The *Princess Lida* doctrine] has no application to a case in a federal court based upon diversity of citizenship, wherein the plaintiff seeks merely an adjudication of his right of his interest as a basis of a claim against a fund in the possession of a state court." 305 U.S. at 466. Importantly, immediately after that dicta, the Court clarified that the federal action at issue was "not such a case" because it did not present questions "as to the right of any person to participate in the res [of the trust] or the quantum of his interest in it." *Id.* at 467. Rather, like this action, the *Princess Lida* federal action presented questions "solely as to administration and restoration of [the trust's] corpus." *Id.*

trustees' administration of it, as well as the South Dakota court's approval of that administration. *Princess Lida* therefore applies. *See* 305 U.S. at 466–67; *see also Dailey*, 987 F.2d at 177 (rejecting a similar version of Plaintiffs' argument).

Second, relying on *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 232 (4th Cir. 2000), Plaintiffs argue that this action—particularly the surcharge claim—seeks money damages that do not require control of the Trust res to grant and thus do not implicate *Princess Lida*. (Doc. 60, pp. 6–7.) Again, the Court disagrees and finds Plaintiffs' authority inapposite.

In *Al-Abood*, a wealthy resident of Monaco sued two "former family friends" in a U.S. district court in Virginia, claiming monetary damages for their alleged fraudulent conversion of funds from her trust, brokerage account, and "real estate ventures." *See* 217 F.3d at 230–31. Defendants moved to dismiss under *Princess Lida*, arguing that the U.S. action was barred by an action they had already filed in a Monacan court. *See id.* at 231–32. In the Monacan action, the defendants claimed that the plaintiff had looted *their* trust—that is, a different trust than the one at issue in the U.S. action. *See id*. The U.S. district court denied the *Princess Lida* motion, and the Fourth Circuit affirmed, reasoning that the district court did not have to control the *defendants'* trust in order to award monetary damages for the diminution of the *plaintiff's* trust and other accounts. *See id.* at 232 ("Even if the Monacan case does concern *a* trust res, the jurisdiction of the federal courts in *this suit* does not depend on or involve exercising jurisdiction over *that res*." (emphasis added)).

In contrast to *Al-Abood*, this action and the South Dakota action involve the *same* trust. Further, unlike the plaintiff in *Al-Abood*, Plaintiffs here are not presently entitled to

*any* of the Trust assets that they claim have been unduly diminished; they are *contingent* beneficiaries, and the contingencies have not occurred. Accordingly, this case does not present an *Al-Abood* situation where awarding monetary damages directly to the plaintiff would resolve the matter; instead, if Plaintiffs here were to prevail on their surcharge and avoidance claims, any recovery would have to be returned to the Trust corpus,[12] and the Court cannot effectuate that remedy without substantially controlling the Trust. This action is therefore *quasi in* rem. *See Cartwright*, 751 F.3d at 762 ("[P]laintiff claims that both the value of the trust assets, and his beneficial interest therein, have been diminished. . . . [I]f plaintiff were successful in recovering trust assets that he claims were diminished as a consequence of defendants' conduct, the court would be required to exercise some control over . . . the trusts in order to effectuate that remedy. Accordingly, we hold that the . . . action is quasi in rem."); *see also Cassity*, 995 F.2d at 1012 (reaching essentially the same conclusion on different facts).[13]

In sum, for the reasons addressed above, this action proceeds *quasi in rem*, as

---

[12] After all, under Florida law, the purpose of a surcharge is to make the corpus whole. *See Lawyers Sur. Corp. v. Saltz*, 658 So. 2d 1152, 1153 (Fla. 2d DCA 1995).

[13] One final point: Plaintiffs raise a third argument—that *Princess Lida* does not apply here because the South Dakota action is "objectionable," "harassing," and "vexatious." (Doc. 60, pp. 7–8.) In support, they cite only the inapposite dissent from *Donovan v. City of Dallas*, 377 U.S. 408, 419 (1964) (Harlan, J., dissenting), and thus the Court rejects their argument for lack of supporting authority. Moreover, Plaintiffs have not given any reason why the South Dakota court would not be receptive to these arguments, which may still be raised there at any time. *See* S.D. Codified Laws § 21-22-13 (providing that "[a]ny . . . beneficiary of any trust under court supervision may at any time petition the court for its action as to any matter relevant to the administration of the trust"); *see also id.* § 21-22-1(1) (defining "beneficiary" as "any person in any manner interested in the trust"). Deciding here that the South Dakota action is vexatious without permitting the South Dakota court to weigh in would assuredly create "the type of legal disharmony the *Princess Lida* Court sought to avoid." *Dailey*, 987 F.2d at 177.

The Court also rejects any other *Princess Lida* arguments raised in Plaintiffs' briefing (Doc. 60) but not expressly addressed in this Order.

does the South Dakota action. As the Plaintiffs initiated this action on June 26, 2014 (Doc. 2, p. 1)—nearly six months after the South Dakota court's January 2, 2014 assumption of jurisdiction over the trust (Doc. 59-1, p. 7)—the Court "must yield" to the South Dakota court's *quasi in rem* jurisdiction and abstain from resolving this action. *See Princess Lida*, 305 U.S. at 466.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendants' Consolidated Motion to Dismiss the Complaint (Doc. 59) is **GRANTED IN PART AND DENIED IN PART**.

   a. The motion is **GRANTED** in that the *Princess Lida* doctrine, 305 U.S. at 465–68, requires abstention from and dismissal of this action.

   b. In all other respects, the motion is **DENIED WITHOUT PREJUDICE**.

2. This action is **DISMISSED WITHOUT PREJUDICE**.[14]

3. The Clerk is **DIRECTED** to terminate all pending deadlines and to close the file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 18, 2015.



ROY B. DALTON JR.
United States District Judge

---

[14] The dismissal is without prejudice in that the Court has not resolved the merits of Plaintiffs' claims. However, Plaintiffs may not refile in this Court.

Copies:

Counsel of Record